We'll hear argument first this morning in Case No. 14-1375, CRST Van Expedited v. Equal Employment Opportunity Commission. Mr. Smith. Mr. Chief Justice, and may it please the Court. On the issue we initially asked this Court to resolve in the petition for certiorari, the parties are now in complete agreement. That issue, of course, was whether a prevailing defendant in a Title VII case is barred from seeking attorney's fees if it hasn't prevailed on the merits. As we showed in our opening brief, such a rule, which exists only in the Eighth Circuit, makes little sense. It doesn't – it's necessarily not compelled by the statutory language and doesn't serve any rational statutory policy to take away the power of award fees in a case of a non-merits disposition. The EEOC, having staunchly defended that rule in its brief in opposition, executed an about-face in its merits brief and now agrees with us that a non-merits disposition can be the basis of a defendant attorney's fee award under Title VII. For that reason, and for all the reasons in our opening merits brief, which the government apparently found convincing at least, we would suggest that the Court should reverse the Eighth Circuit's ruling and resolve the circuit conflict and rule that prevailing defendants can seek fees as long as they meet the Christiansburg standard, whether or not the disposition was on the merits. If there are no questions about that, the second issue is what do we do? Sotomayor Isn't the standard whether the EEOC's actions were frivolous, unreasonable, or without foundation? That's the Christiansburg standard, yes, Your Honor. Yes. So what difference does it make on what ground it was dismissed? I couldn't agree more. Sotomayor I've been reading these briefs with or without prejudice, merits, non-merits. I don't know that even if a judge gets to that point of deciding whether it was on the merits or not, that's not enough. You always have to decide the bottom line. Right. But the Eighth Circuit's ruling was that even if it was frivolous or unreasonable or without foundation, if the reason it was frivolous or unreasonable or without It wasn't despite a suggestion of any frivolity or groundlessness to this complaint. Well, Your Honor, there certainly is. As the case turned out, they never had any foundation whatever for bringing this class claim. They never had any pattern of practice that they could identify and prove. They are they the claim was that many women had been harassed by lead drivers, not one but many. Well, that was the allegation, Your Honor. But in order to bring a class claim, a collective claim under Title VII, what the EOC needs is a pattern or practice, which means either an express policy that's discriminatory or some unexpressed standard operating procedure. That's the term the Court used in the Teamsters case. In the absence of that, what you have is a collection of evidence. I thought that was the whole thing, that the company was not giving the lead drivers adequate training, to put it bluntly, they were not taking sexual harassment seriously. Well, Your Honor, that was the complaint about the employer, that there were complaints about these lead drivers and the employer just didn't take them seriously. But what became clear as the case proceeded is that, A, the EOC never investigated any kind of pattern or practice at the investigatory phase. They only investigated two cases. And then when they started alleging that they had a pattern or practice and telling the Court they wanted to go to trial on a pattern or practice, we filed a motion for summary judgment and said, what is your evidence that there's a consistent policy of disregarding these complaints, that there is a consistent failure? And as Judge Reed found, the evidence didn't remotely support that. The evidence was that the EEOC, when it was investigating this case, asked CRST. Tell us about complaints you've gotten of sexual harassment. And initially the company came out with two names. But there were well over 100. Your Honor, the EEOC's suggestion that we did not answer their question completely was looked at in detail, both by the district court and by the Eighth Circuit. And they both concluded that the only question at issue was a question about people who had complained about the conduct at issue in this case, meaning Ms. Stark's harassment. The suggestion that we had not answered that question completely was rejected by the district court on pages 168 and 169 of the Petition Appendix. It was rejected by the Eighth Circuit as factually baseless on page 92 of the Petition Appendix. They simply didn't ask a question that called for that until later in the investigation. And what all the judges below, the district judge and the majority in the Eighth Circuit, concluded is we answered every question in the investigation fully and accurately. So that is not a basis for which you can't answer the question. Ginsburg. Is it so that when you were initially asked how many complaints have you gotten or tell us the names of the people who have complained, they came up with two people? It is true that they named two people. And as Judge Reed concluded, that wasn't accurate, was it? Well, that wasn't the question. The question that we were answering was people who had complained about the particular conduct in the charge. And so as Judge Reed concluded, we gave them more information than the EOC requested. That's on page 169 of the Cert Petition Appendix. When they later on asked for all the people who had filed charges of discrimination, we gave them all that information. That was about eight more people that they got. Finally, at the end of the investigation phase, they said give us the names of all the women who have driven for you in the last several years with their contact information. We gave them that. They didn't do anything with it. They then filed their class finding of a reasonable cause, having investigated Ms. Stark's complaint and one other, and did no sort of systematic look at how things were done at the company. And then when they put together this case in court, they listed 270 people who were so-called class members. And it turns out most of those claims washed out. They simply were nonmeritorious. And we file a motion for summary judgment saying they don't have any evidence of a systematic problem here, of a pattern or practice. And Judge Reed looked at this wealth of information which is developed, 154 depositions, accepted the truth of everything that those women said in those depositions, and concluded that, in fact, by and large, the policies exist, the policies are followed, people are the ‑‑ complaints are followed up, remedies are put in place, women are protected. And she said, assuming the truth of everything that's in these depositions, there may be examples of sporadic exceptions to that, where the managers could have done a better job, maybe they didn't act fast enough, maybe they could have been more severe in their sanction or whatever, but that that's ‑‑ that no rational finder of fact could conclude on this record that there is any kind of pattern of neglecting sexual harassment complaints, any kind of problem with the policies that existed, any kind of problem with the training. That was all factually not true. It is true that there were some complaints which, of course, when you read them, are quite serious, but that doesn't mean the company is liable, certainly not liable on a class basis, for claims which were never investigated, never conciliated. The whole policy of the statute, of course, is to have a reasonable investigation, have a reasonable cause finding, have conciliation. And here that became meaningless, except with respect to one claimant. Pardon me. Ginsburg-Mills, when you're here complaining about a threshold question, that is, you said that the investigation and conciliation efforts were inadequate, but you said that after 18 months of heavy litigation. No, Your Honor. Here's what happened. They come in October 15, 2008, with their list of 270 people. We then say to the Court, well, they can't possibly have investigated 270 claims, and how are we going to adjudicate this anyway? They respond and say this is a pattern or practice case. We're going to litigate it the way we litigate pattern or practice cases. We're going to have bifurcation. We are going to have an initial phase of the trial where we prove that it is their de facto policy to neglect sexual harassment, and then we're going to have a damages phase where individual claimants will come in. And so we had a class claim which they said was a pattern or practice case, and there was no way at that point for us to say, well, you can't litigate these individual claims, because they were characterizing these people as class members and they were going to use them as witnesses to establish this supposed – this policy of neglect of sexual harassment. We then do 154 depositions of all of these people, except for the ones who didn't show up at all, the other 99, and most of those claims turned out to be non-meritorious, even accepting the truth of everything that the complainant said. We then file a motion that says you don't have a pattern or practice case. This is not a class case. You can't litigate this case because there is no systematic policy that has been identified, and we have this wealth of factual information from these 154 depositions, 154 different stories involving different drivers, different charges, different conduct, different responses. And Judge Reed reads thousands of pages of testimony and concludes there isn't any evidence that would allow a rational trier of fact to conclude that there is a systematic system. Kennedy, that all gets to the reasonableness or unreasonableness point, and we – this Court need not reach that, I take it, if we address the prevailing party argument, and it is – as you understand the government's position, we can quote them, of course, ask them in a few minutes, in what cases where there is not an adjudication on the merits would the government agree that there is a prevailing party, that the defendant can be a prevailing party? I think they've said the merits issue is not really relevant. As I understand it, what they've said certainly is, you know, if it was a – they would say if it's a disposition with prejudice, whether it's based on a merits issue or some other merits, non-merits issue like statute of limitations or something else, that appears to be their position. And I think the problem with the without prejudice, with prejudice distinction, which they brought out in their merits brief, is that's the first time in this litigation that that argument has ever been made by the EEOC. They have never in the lower courts ever argued that, A, the disposition here was without prejudice, or, B, that that's a basis on which CRST was not a prevailing party.  Kagan. And so I just want to ask if you could please just go on, Mr. Smith, understanding that you think that, but if we could just go on from that, what is wrong with that position, and do you have a substitute test or is there no substitute test in your view? Smith. Smith. Smith. Well, Your Honor, the answer to the first question, the first problem with the argument is it's factually not true. The disposition here was with prejudice. Kagan. Smith. Right. Let's just assume that it were. Smith. Okay. And leaving aside the waiver and the fact that there's no factual predicate for the argument here, on the merits, we didn't have an opportunity to brief this issue because it's not in the case until we're writing our reply brief. So we have about a paragraph on the issue. I think that there is a circuit conflict on the question, whether or not a district judge ought to have the power in the suitable circumstances when dismissing a case for failure to do something like pre-suit conditions, where there was a sufficient level of abusiveness by the plaintiff. He should have known, he or she should have known that this case was not ready for suit. It has cost the defendant money that shouldn't have had to be spent. That even in a without prejudice dismissal situation, there ought to be the power of a court to exercise its discretion. Kagan. Even if the reason for the dismissal is completely curable? Well, it's curable perhaps, but there are going to be situations, and this case is a good illustration, where you can't get rid of the fact that you've spent lots and and had to make reasonable cause findings and been conciliated, likely would never have seen court to begin with. Eighty-seven of these claims were summary judgment was granted after the women were deposed. Ninety-nine never showed up for their deposition. But then you are suggesting that whatever the reason for the dismissal is, with prejudice, without prejudice, for any reason whatsoever, curable or not, it's up to the discretion of the court. I guess I would, given the severity of the Christiansburg standard, it's not clear to me that you can't trust district judges in those situations. It's not clear to me that we need to have a categorical bar that turns on this issue of with prejudice or without prejudice. In this case, as to, I guess, the 67 women, the court, before it goes to the court of appeals on round number one, says the court bars the EEOC from seeking relief. Is that a phrase district courts used often, bars? You know, I think it was invented by the judge here because she's dealing with a rather peculiar animal, which is a one-count complaint which says Ms. Stark was sexually harassed and it was not appropriately handled, and a class of people were sexually harassed and it was not appropriately handled, and they start bringing these things in, and to the extent that, at that point in the case, they are trying to litigate them as individual claims. And so rather than dismiss the claims, she said individuals, when they were litigating on their own behalf, she would dismiss the claim with prejudice, but she would tell the EEOC you're barred from litigating this claim, this claim, and this claim, and there were six or seven different categories of claims where she went through and said you can't do these six because there was never a complaint made to management, you can't do these six because the conduct wasn't severe enough to be sexual harassment, and then she gets to the 67 and says you can't do these claims because you never investigated them or conciliated them or made a reasonable cause finding. And there was the whole class thing which led you to bring them into court. Ginsburg-Miller With respect to those 67, I thought we had held that in Locke's finding that the remedy for inadequate conciliation, investigation and conciliation, is not dismissal, but return to continue the efforts to conciliate. Waxman What you held in Locke's finding, Your Honor, is that where there is a failure of conciliation, the appropriate remedy is a stay so they can conciliate some more. And you cited a provision in Title VII, in 706, which specifically authorizes the judge to stay a case for further conciliation. What Judge Reed concluded is that a stay wouldn't make sense here. She expressly considered that question and said, well, you haven't even investigated the claims and you haven't made any findings about the merits of the claims and you've put the court and the parties through years of litigation. In that situation, the additional sanction of barring you from litigating the case is appropriate. And I think that clearly ought to be within the discretion of a district court. Kagan Mr. Smith, do you understand her order as saying that if the EEOC did engage in conciliation, had made the initial findings, had satisfied all the pre-suit requirements, could the EEOC, do you think, have come back and brought those individual claims? Waxman Certainly, I think she was very clear that that was not available to them. Kagan Even after filing the pre-suit requirements, even after satisfying the pre-suit requirements? Waxman Yes, because she considered whether to stay the case and let them go do that and said, no, I'm going to do the much more severe remedy of dismissing these claims. And then the government Kagan Why didn't she say with prejudice, then? Waxman Well, she does eventually, Your Honor. The judgment that ends the merits case in this case, merits phase in this case in 2013, entered with the agreement of the government, expressly says that the case and all the claims that were litigated in this case were dismissed with prejudice. That's on page 118 of the joint appeal case. Kagan But why isn't it? But back in 2009, she didn't say that. So why didn't she say that? You had asked for the case, all of them, to be dismissed with prejudice. She did not include that language. Waxman She didn't use that language. She said the government shall take nothing in the judgment. She said I'm not going to stay the case and let you go back and do a do-over. And she said it's a severe remedy that means these claims may not ever see the inside of a courtroom. But she didn't use the with prejudice language at that point. But the government understood what she meant. They complained in their brief appealing that order, that they had the order had barred these claims from ever seeing the inside of a courtroom and that the judge acknowledged that fact. They did that again in the second appeal from the Eighth Circuit. And then, most tellingly, they file a Rule 60 motion after mock mining is decided last year, in which they ask the district judge to reopen the case and say you should have done a stay, you shouldn't have dismissed this, and the reason you should do that is because we have been prevented for the last six years from litigating these claims. And does Judge Reed then say, no, it was dismissed without prejudice, I wasn't telling you you couldn't litigate these claims? No. She said, I did what I did and I did it for good and sufficient reason because of the way you messed up this case and you abused the process and didn't follow your obligations, and I'm denying the motion. And they then appeal that to the court of appeals, and the day before they file their merits brief in this court, they pull that appeal because they recognize that the Rule 60 motion and arguments they're making is completely inconsistent with the argument they're about to make about it.  And I understand their motion did not say, now we've satisfied all our pre-suit requirements, right? So she might just have said, well, you still haven't satisfied your pre-suit requirements, so of course I'm not changing anything. Well, Your Honor, there is a question is what would have happened if the government had come back and said we have satisfied the pre-suit requirements? Would she then have thought, okay, well, that's a different story now, I didn't dismiss these with prejudice, now that the government has satisfied the pre-suit requirements, it can go ahead? No, Your Honor. I think it's quite clear from what she did say last fall, in December, actually, that she knew it was with prejudice, intended it to be with prejudice, and wasn't going to change her mind. And I think there's no other way to read the record here. And we ultimately have a judgment that says with prejudice, which is the controlling judgment. Where is that? There's a piece of paper called the judgment somewhere. It's what you see if you look at the Joint Appendix, first volume of the Joint Appendix, Your Honors. There is a judgment that appears on page 115 and 116, which says judgment is entered in accordance with the attached. And the attached is an order of dismissal which was negotiated by the parties. And if you look at the bottom of 118A, the order of dismissal which is incorporated in the judgment, at the bottom of 118A it says, Well, that's the end of it, isn't it? It was dismissed with prejudice. That's the point, Your Honor. There doesn't seem to be any doubt about it. And the government knew it. It actually agreed to this form of judgment. So we find it rather remarkable that we were facing this argument. Sotomayor, what are you asking us to do in this case? What's the disposition that you're seeking? Are we supposed to say Eighth Circuit, you're wrong, it has nothing to do with exclusively with the merits, do a do-over? That's the issue we should certainly reverse them on, Your Honor. I don't think anybody else. I think we have agreement in the courtroom that that's just, at least on this side of the bench, that that's an incorrect ruling. And, you know, I think you should give the back of the hand to this idea that the judgment here was without prejudice and, therefore, that has some impact on this case. It's just not factually true, it was not preserved, and it's not a – it's not a – probably not the right line anyway. Then the question is – Ginsburg-Goldenberg Mr. Smith, will you explain why dismiss this case with prejudice isn't talking about the case that was settled, the Stark case? I mean, there were – all the other women were out of it, it was down to two women, one dropped out, one was left. Why isn't this case the case that was just settled? Smith, I think it's pretty obvious that the case is dismissed with prejudice with respect to all the claims asserted by the EEOC, including the 66-year-old woman who was in the EEOC. And so when you dismiss that count, it expressly says, with respect to all the other claims asserted by the EEOC, I think it's pretty obvious that the case is dismissed with prejudice with respect to all the claims asserted by the EEOC, including the 67-year-old woman. I would be up for dismissal. Kagan Well, all the claims that were then being litigated by the EEOC, which did not include the claims that had previously been dismissed for failure to satisfy the pre-suit requirements. Smith But it's a basic principle that a judgment at the end of a merits phase goes back and incorporates all the prior rulings of the court and is based on the prior rulings, which often clean out. Kagan I think that's not – that's not right. If the prior ruling was based on a curable dismissal and the EEOC had simply done nothing with respect to that set of claims, neither cured it nor renounced the possibility that they would cure it, in 2013, the Court was facing a much reduced set of claims and a different suit. Smith Your Honor, I think that the judgment is going to go back and cover everything that happened in the case. If there was something left that could be reopened that had been dismissed without prejudice, you wouldn't agree to a judgment in this form. In any event, the government told the Eighth Circuit twice in two separate appeals that these claims were dismissed with prejudice and that was a problem for them, that they were precluded. They file a Rule 60 motion acknowledging that they were dismissed with prejudice and asking for that dismissal to be lifted. I just – it's hard for me to believe that this argument is available to them, especially since they never made it before.  So why should we decide this? Smith Well, I think you should. You should remand it completely and let the Eighth Circuit decide, or the district court decide, what it meant. Sotomayor Well, you should certainly decide the issue that was – we brought you here, which is the circuit conflict. Sotomayor Assuming we reverse, why don't we leave it to the court below to decide whether they will, in fact, entertain the government's new argument, because there might be a waiver of that, or whether there's a factual predicate for it at all. Smith You could do that, Your Honor. I guess the main reasons you might want to at least address it briefly is if you're going to go on and follow the government's lead and reach the Christiansburg issue here, which the government asks you to do at the end of their brief and decide – they want you to decide that the – whatever positions they took on behalf of these 67 women were not without foundation, were not unreasonable. We're actually in some ways tempted to ask you to go ahead and rule on that issue, too, because we've been doing this fee issue now for 6 years. And I think the government's conduct here was glaringly unreasonable. Kennedy On that one issue, the amount of words, $4 million, did that include the – was that your entire bill, or did you segregate – did the attorneys segregate out the cost for the Stark? Smith I think the Stark issue gets separated out. It's the entire bill for all 154 of the depositions, including the ones that were separate. Kennedy But there were – in other words, this was not 100 percent of the fees. It was this – the fees were separated out. Smith First of all, it was Cedar Rapids rates, and we charge Chicago rates. But aside from that problem, it was about – it was – there was certainly – the part that the government had prevailed on, where there's a settlement, that was certainly taken out. So I don't think there's an argument about the amount here of any significance. So I do think that there's a – there may be some value in the Court reaching the Christiansburg issue, if only to instruct the EEOC that there's a difference between a pattern of practice class case where you have an actual policy or practice that you're litigating, and a case where you just have a bunch of individual claims which you – which don't add up to any kind of pattern of practice. If you allow the EEOC to use class language like this as kind of a club at the end of an investigation that's not a class investigation in a complaint for which they have no factual basis, then you end up creating a great deal of litigation exposure for defendants in situations where class litigation really isn't appropriate. Kagan Mr. Smith, do you think it's possible to have a pattern of practice appropriate class claim with respect to sexual harassment? Smith I do, Your Honor. I think it would – but it may be more difficult than in other contexts. For example, you could have a pattern of practice case, I think, about one work setting in which the hostile work environment would affect any woman working in that setting. I think that would be appropriate. If they had some specific policy that they identified that they said has a discriminatory effect, such as, for example, we had a three strikes policy, you have to harass people three times before we'll take the complaint or something like that, that could be a pattern of practice case, but which I don't think you can do is have 154 individual stories involving different alleged malefactors, different alleged conduct, different allegations about who – what complaints were brought to management's attention and different stories about how management responded. Ginsburg Couldn't you have a pattern of practice case of saying there are – all these complaints were made and the employer didn't take them seriously, either did nothing or gave the driver a slap on the wrist? Smith Your Honor, I think you can have a standard operating procedure that you show by saying over and over again they don't do what they're supposed to do and that their policies are not taken seriously. But you have to show a consistent pattern or practice in order to do that. And what Judge Reed said is, by and large, that's not what they do. They do exactly the opposite. There may be some situations, if we take the testimony of the complainants at face value without any hearing from anybody else, that where some of the managers didn't do as good a job as they might have in some of these cases, but that's the sporadic exception, that's not the rule, that's not what they do as a matter of policy. If I could save the balance of my time, Your Honor. Roberts Thank you, counsel. Mr. Fletcher. Fletcher Thank you, Mr. Chief Justice, and may it please the Court. The question on which this Court granted certiorari is not, as Mr. Smith suggested and has been the basis for his waiver arguments, whether or not the Eighth Circuit was correct to say that a Title VII defendant has to prevail on the merits in order to secure a fee award and to be a prevailing party. Instead, the question that Petitioner framed in the petition and the question on which this Court granted certiorari is whether the dismissal of a Title VII case based on the EEOC's failure to satisfy its pre-suit obligations can form the basis for an award of attorneys' fees. Alito In your brief in opposition, you argued that the Eighth Circuit was correct. Did you not? Fletcher We did. We endorsed the Eighth Circuit. Alito Have you abandoned that argument? Fletcher We're advancing a slightly different argument that yields the same answer on the question presented at the hearing. Alito Have you abandoned the argument that there must be an evaluation of the merits? Fletcher We're making a slightly different argument, yes. Sotomayor You have abandoned it, was the question. Fletcher Well, I. Sotomayor Yes or no? Fletcher We have abandoned the Eighth Circuit's view that you need a disposition on the merits. But I think in explaining, I don't think that the change in our argument and the change in our argument to a different argument that's still within the scope of the question presented constitutes a waiver. And I'd like to talk about two reasons why, because I understand Mr. Smith to have argued that we're waiving the version of the argument that we're presenting now at two stages of the petition. Breyer I mean, that's up to you what you want to argue. But I would like to see, look, it says, can the dismissal, based on the failure to satisfy, form the basis for an attorney's fee? I take that to mean, is the defendant, can the defendant in such a case be a prevailing party? You have to meet the other standard, too. I would think the answer is obviously yes, they won. Okay? So if they won, why isn't that the end of it? It says judgment, it says the case is dismissed with prejudice, therefore they won. So why aren't they the prevailing party? So I'd like to talk about the dismissal of prejudice, which is a case-specific issue here that I do want to address. But I think first I want to talk about the broader question, which is what makes a party a prevailing party, because this Court addressed that in its Buckhannon decision. It said prevailing party is a term of art. In the fee-shifting statutes, including Title VII, it means a party that has secured an order that materially alters the legal relationship between the parties. Breyer, can't a plaintiff be a prevailing party? I don't know the answer, but I thought the plaintiff brings a suit charging, you know, serious discrimination. After lots of litigation, the parties decide to settle, and they settle on terms very favorable to the plaintiff, really because of the litigation. I thought in such cases the plaintiff was the prevailing party. Am I wrong? Well, under Buckhannon, it depends. What this Court says is that under Buckhannon, if the Court incorporates the settlement agreement into a consent decree, or the lower courts have held if the settlement agreement is approved by the Court or incorporated into the judgment such that it's enforceable by the Court, then yes. But courts have generally said that private settlement agreements or the particular issue in Buckhannon, if the defendant just voluntarily changes its conduct and the plaintiff gets what it wants, the plaintiff is not a prevailing party because it has not secured an order that materially changes the party's legal relationship. Sotomayor, I suppose that the settlement agreements often take into account liability for attorney's fees. How can you apportion those? Very often, yes. Sotomayor, why don't we apply the same standard to a defendant? The plaintiff is seeking a change of the status quo, but a defendant is actually all they want is the status quo. They want just to stay not to be found liable. So why don't we apply the question of whether there's been a legal change between the parties? The defendant was never seeking that. So what the defendant was seeking, though, was a judicial declaration that essentially ratifies the status quo, that ends the dispute. And so after this Court's decision in Buckhannon, the circuits have looked at this question, and eight of them, which we cite at pages 26 to 28 of our brief, as far as we can tell, every court to consider this question, has said that the same rule that if the defendant has not prevailed in the litigation in the sense in which the fee-shifting statutes have used in the party. Roberts, I don't know where that artificial line comes from. I mean, the defendant wants to win, and I don't know, it's getting pretty, when I was practicing that parties didn't come in and say I want to win, and I want to win on this ground. They said I want to win. I want the case thrown out. Well, I think that's right, but I think that what the defendant wants, and I think this is perhaps expressed best of all the cases we cite in Judge Easterbrook's opinion in the Steele Co. case, the defendant wants to win, but the defendant wants to win in a way that definitively ends the litigation. And if the defendant wins on a ground that makes clear that the plaintiff can come back to court the next day or in a different district or after satisfying a precondition to suit, I don't think the defendant has won in the way that the defendant wants to win. Alito, that is a material alteration in their relationship, is it not? I mean, it's not as big a one as the defendant would like. The defendant would like to have a win that precludes future litigation. But don't you think a defendant who secures a dismissal of a complaint and therefore doesn't know whether the complaint is going to be filed again is going to celebrate, isn't that an alteration in the relationship between the parties? I'm sure the defendant would be happy about that, in much the same way a party would be happy if they secured the reversal of a directed verdict on appeal or if they defeated a motion for summary judgment. And you could, in some sense of the word, say that all of those things materially change the party's legal relationship because they settle certain issues and they alter the course of the future litigation. But what this Court has said in Buchanan and in the cases that it described there is that those sorts of interlocutory wins don't count. Breyer, this is not interlocutory. This ended the litigation. So I mean, I have the same question the Chief Justice had. Where a defendant secures the end of a case, dismissed, goodbye, you win. Now, maybe they can bring another case tomorrow. That's another case. But they won this case. That's going to be pretty hard for them to get attorney's fees anyway because there's a very tough standard. But why isn't a simple rule the best rule? If the case is over, the defendant won, he is the prevailing party for purposes of that case. Then we could go on to take all the things you want to do into account when we consider what kind of fee is reasonable and when we consider whether it's based on frivolousness. I mean, the plus of that to me is the simplicity. And I don't see how it would work any unfairness or serious harm to the objective of this statute. So I'd appreciate it if you would address what could be my benighted view. I wouldn't go that far, but I do think it's a different view and a very different view than the one that all the courts of appeals that have considered. Breyer. Well, then they might. I mean, unfortunately, I am in the position of having to decide it. So I put the question to you and I'd say, at first blush, the simplicity of this approach, its consistency with the language, its ease of administration and so forth, in terms of prevailing parties, has that to recommend it. So now what is, you don't like it, so tell me why. So I think because when a defendant prevails on this sort of ground, because the plaintiff, say, withdraws the complaint voluntarily or secures a dismissal with prejudice, the dispute really isn't over. And it certainly isn't over in the sense that this Court used the term in Buchanan, which requires a judicially sanctioned material alteration of the legal relationship of the parties. And I think Judge Easterbrook put this well in Steele Co. If the plaintiff can come back the next day or if the plaintiff can sue in the next district or if the dispute is going to continue, that really doesn't, hasn't changed the legal relationship of the parties. Roberts What if they don't? What if they don't come back the next day? What if they don't sue in the next district? Then it seems to me the purposes of this fee-shifting provision have not been served. Well, I don't think that's quite right. I think your Honor's question alludes to, I think the purpose of the fee-shifting statute, and this is what the Court said in Fox v. Vice and Christian Berg, is to deal with factually or legally unjustified suits. And I think, first of all, there's some reason to question whether that purpose is served, where the reason why the suit is defeated is the failure to satisfy a procedural precondition. I'm not sure it's fair to say that that's a factually or a legally ungrounded suit. It's a suit where the plaintiff failed to take a step that it was supposed to take before coming to court, but a curable step. And I think in those sorts of circumstances, to say that those defendants can't recover for whatever fees they secure in resolving that initial procedural question doesn't really get at the core of what the statute was trying to do. Breyer. Breyer, because there's much to recommend what you're saying, saying at least if you could come back the next day, at least if you could sue in another district. But have you heard of the Hatfields and the McCoys? You see why I bring them up? Because they're going to be fighting each other for 30 years. And if you tell them they can't sue in this district, they'll change the complaint slightly and go to a different district. So if I adopt the standard you're just suggesting, I will discover a whole host of questions. Is this really the same suit? What about the possibility that they could have sued in Tasmania? And what about the possibility you see where I'm going? And so I'm back again to that kind of concern, an administrative concern. Versus the simplicity of saying, well, that ended this case. If they bring another case and it's frivolous, we'll consider attorneys' fees in that one. So I guess to the administrative point, I do think the views of the circuits and the views that the circuits have been applying for 16 years, in some cases more now, ought to be persuasive, not just because that's what the circuits are doing. But just in the notion that if our rule was going to cause problems of administration like you suggest, you would expect to see it in the circuits, and I don't think you're seeing that in the circuits. I think they're applying this rule. Has the plaintiff been barred from pursuing this claim permanently? If so, then the defendant is a prevailing party. If not, if it's a different ground, if it's a precondition to suit, if it's the wrong form, if it's a dismissal without prejudice, then the plaintiff hasn't been precluded. And I don't think you can hypothesize cases. I don't think we've seen them in practice. Robertson, wouldn't it be an adequate response to your concern if fees were awarded solely on the ground in which the case was dismissed? That would be the end of which the judge would have the discretion to do that. If the judge looks at this and says, okay, it's clear you're in the wrong venue. You know, an hour's of research would have showed you that. And so, you know, it's frivolous on that ground. And I'm throwing the case out because the defendant prevails on that ground. Now, the defendant may have spent a lot of other money with depositions and everything else, but the judge could say, well, you can file the case again tomorrow. You probably will. You just have to go into the next district. So I am going to award fees. They're going to be equal to the amount of time the defendant had to spend defending against your frivolous venue assertion. It doesn't have to do that. I mean, you know, if you have the wrong venue and they spend 5 years doing depositions because you have the wrong venue, they should probably get fees for all of it. But if it's just, you know, a small portion easily disposed of, is that a possible remedy? So I think that's a better, a more sensible rule, certainly. I'll say a little bit about why I think it may be a little tricky to fit into the doctrine. But just to illustrate its application in this case, for instance, a Petitioner got a fee award on the order of $4.6 million, $4.7 million. As we explained in our brief, the amount of those fees that are attributable to actually litigating about this ground here, whether or not we satisfied the preconditions to suit, is a little more than $100,000. So. Roberts, I mean, that may be a case contrary to the proposal where it's that discreet. In other words, your frivolity on that particular point compelled them to incur $4.6 million over many years. It's not their fault that that issue didn't come up until later in the litigation. And it's sort of intertwined with the merits. It's not a venue objection. Well, I'm not sure that's right, Mr. Chief Justice. I mean, first of all, we disagree that we were frivolous in thinking that we'd satisfied our pre-suit obligations. That's an issue that hasn't been resolved by the Eighth Circuit yet. And we think for some of the reasons that Justice Ginsburg suggested and that Judge Murphy suggested on the merits in the Eighth Circuit, actually, we very much were not frivolous in thinking that we'd satisfied those preconditions. But to get to the heart of your question, I do think, actually, that it is a very discreet issue. It's Title VII says before you come into court, you have to do an investigation, there has to be a reasonable cause determination, and you have to attempt to conciliate. Roberts. It may be a discreet issue, but it's a cause, in fact, for all the other fees. Well, but I'm not sure that's right, in that if Petitioner had raised this early on, and I do want to be clear that from the outset in this litigation, I disagree a little bit with what Mr. Smith said about what the EEOC looked into in its investigation. But from the outset, everyone knew that we had told them in conciliation, we think you have a problem here, we think you're engaged in sexual harassment against a class of women. We tried to conciliate that class claim. They declined to do that. Roberts. I suppose whether the issue we're debating may not be directly pertinent. My question is whether or not that could be a factor that the district courts could look at in deciding the amount of fees and so on. Yes. I take that point. So if you resolve the question against us, you say a defendant could be a prevailing party when it prevails on this sort of ground that doesn't foreclose for the litigation, then I absolutely agree with you that it would be perfectly appropriate and, indeed, I think a good idea for the district court to engage in this kind of inquiry. But I guess I think the main question is the same. Kennedy. So I understand your answer. Let's assume a hypothetical case, not this case. For 5 years there's litigation, and the litigation is finally dismissed because the EEOC has not followed its obligations. It's a frivolous or an unreasonable suit. The trial judge said you are barred from proceeding further in this case. Yes. Doesn't say with prejudice or without prejudice. Yes. Could fees be awarded in that case? I believe no. I believe that is this case, but I believe no. Because he didn't say with prejudice? Because that sort of dismissal under principles of res judicata, under this Court's interpretation of Federal Rule of Civil Procedure 41, when you have, even after extended litigation, when it's done. Incidentally, is it clear after this time that there was no time bar if they had come back again? That's right. The EEOC does not have a stanchion of limitations that's applicable to suits that are brought by the commission. But. Okay. So then your position is no matter how unreasonable the plaintiff has been, no matter how costly it's been, no matter how long it's taken, that you cannot award fees unless the case, and then the case is dismissed, and the judge says you are barred from bringing this claim in this suit, no fees. That's your position? That's correct. And I understand that in some cases, I don't think this is such a case, but in some cases that might have unappealing consequences. Alito, in a case like that, what if the EEOC, after that dismissal, goes back and looks at these cases and says, you know what, we really have nothing here, and therefore chooses not to bring the case? You would say that because the first case was dismissed without prejudice, there could be no fees? I would, and I think that follows from. What sense does that make? I think it follows from Buchanan. Remember, the issue in Buchanan was you have a plaintiff who brings a suit, by hypothesis let's assume it's a meritorious suit, and there's some litigation and the plaintiff incurs fees, and then at some point the defendant sees the writing on the wall and voluntarily recedes from the conduct and gives the plaintiff exactly what they want. I think the Court recognized that there's a really strong policy argument for allowing courts to award fees to plaintiffs in that case, because they're doing what Title VII and the Civil Rights Statutes intended to encourage plaintiffs to do, and they're sort of left, you know, out of pocket for all of the fees if they're not eligible for fee awards. But this Court still said they're not entitled to get fee awards because they haven't secured a court order that materially alters the party's legal relationship. And I think the same thing is true of the sympathetic case in New York. Alitoson I guess I just don't see what functional sense that makes. If the defendant has wasted a huge amount of litigation resources and caused the — I'm sorry, imposed a great and unjustified burden on the defendant, I don't see why as a functional matter, unless this is foreclosed by prior decision, there shouldn't be a possibility of fees in that situation. Well, I do think it's pretty close to foreclosed by Buchanan. Obviously, Buchanan dealt with whether or not a plaintiff is prevailing. Our argument is that the Court's rationale was prevailing party is a legal term of art. It means a party that secured a material alteration in the legal relationship of the parties. And the Court in Buchanan stuck to that, despite very strong policy arguments, saying that those sorts of plaintiffs ought to get fee awards. And I think it ought to do the same thing here when it's presented with essentially the converse question. Breyer's argument, I take it your argument now, is what's sauce for the goose is sauce for the gander. Buchanan says that a plaintiff can't recover, even if he litigates to death and they find, give up and pay him a billion dollars, unless there is a judicially sanctioned change in legal relationship, he can't cover fees. And if he can't recover it, why should the defendant recover it, unless there is a judicially sanctioned change in legal relationships and the only candidate for such a thing is a dismissal with prejudice of some form. Yes, that's correct. Okay. Got the argument. So if that's the argument and that argument is correct, why don't we have the situation here? Because you heard the judgment being read. It says with prejudice. Yes. So there's two judgments in this case. The one that's entered after the district court resolves the issue that's before you now, the 67 claims that are before you now, is found at pages 216 to 217 of the Petition Appendix. And what the district court says is the EEOC has asked me to stay this, to allow it to go conciliate. I'm not going to do that. I'm going to dismiss instead. And it drops a footnote. This is a few pages earlier on, pages 213 to 14, and it cites another case that dismissed a claim under the same circumstances. That earlier case the district court cited as precedent for the dismissal was expressly a dismissal without prejudice. The district court then goes on to say, and this is language that you've referred to, Justice Kennedy, that the EEOC is barred from further litigation on the claims. But it says barred from further litigation in this case. It cannot pursue relief in the trial in this case. And I think most importantly, when the district court says it's dismissing and then when it ultimately enters a judgment of dismissal, it does not specify that the judgment is with prejudice. And we actually have a Federal rule of civil procedure, Rule 41b, that is particularly and expressly designed to address this situation, to ensure that parties and courts don't have to engage in the kind of inquiry that Mr. Smith was engaged in in the first half of the argument, of trying to figure out what did the judge mean, what did the parties think that the judge means. Rule 41b is at page 17a of the Petition Appendix, and it says an involuntary dismissal, it establishes a default rule. It says, ordinarily, if you have an involuntary dismissal by the court, unless the court specifies otherwise, it operates as an adjudication on the merits. Ordinarily, dismissal with prejudice. Roberts. So what you're saying is, the judge said they cannot proceed again in this case. They cannot seek relief on behalf of these 67 women in this case. And why isn't that prevailing? Why aren't they prevailing? That they may not prevail in another case, or that's your argument? That's my argument. Because they've engaged in, under your theory, they've engaged in an illegal practice. But they prevailed in this case. But they may be sued by somebody else in another case. They may be sued by us in another case. They may be sued by the commission in another case. They've secured a dismissal that said the EEOC didn't satisfy the precondition that it had to satisfy before bringing these claims. But our view is, and we think we're right about this, and we think it's supported by Costello, that leaves the EEOC free to satisfy the precondition and come back to court. What do you think the significance of mock mining is on this issue? So our view is that mock mining suggests that this issue shouldn't come up again in future cases. As we read mock mining, it suggests that the appropriate remedy for a failure of conciliation like the one here is a stay rather than a dismissal. And I don't think it's a stay. Roberts. Roberts. I mean, if the EEOC doesn't do anything at all, I mean, under mock mining, if they don't conciliate, the remedy is go conciliate. Yes. Wouldn't you think if the reason they didn't, it was frivolous for them to bring the suit without conciliation? You know, somebody said, well, we've got to conciliate. And they said, oh, forget about it, go ahead. Why wouldn't fees be a perfectly appropriate sanction? In other words, there's no under some sense, there's no incentive for them to conciliate, because if it turns out they didn't, they have to go conciliate. But if they were subject to fees because they ignored their duty to conciliate, it seems to me that might give them some incentive to get it right the first time. So I think I'd like to quibble with the premise. I think as we explained in our brief, the EEOC has a great incentive to conciliate because it gets a massive number of complaints each year or charges each year. It finds a reasonable cause to believe that there's been a violation of Title VII in a huge number of cases. It has very limited resources, and so it really does try and actually does resolve far more cases by conciliation than by litigation. It doesn't rush into court. Roberts. Roberts. So you're not likely to be subject to this sanction in many cases, which is a good thing. Right. But sometimes, okay. But I take your point that then the question is, so if the EEOC, let's by hypothesis sort of unreasonably fails to satisfy its conciliation obligation and the court finds that to be the case and then it stays pursuant to mock mining and sends them off to conciliate, could the court award fees, I take to be the question. I think the answer is it couldn't do it under this provision because everyone agrees that you have to be a prevailing party to get fees under this provision. I don't think even Mr. Smith would argue that if all the defendant gets is a stay, the defendant has prevailed. Now, our view is that a dismissal without prejudice to allow for conciliation and then the potential for coming back to court isn't that different from a stay to allow for conciliation and for the same reason. Sotomayor, it's hard to imagine that the district court didn't consider this a dismissal with prejudice when it announced in this very decision you're pointing to that the Petitioner was a prevailing party entitled to attorney's fees at the end of the case. Certainly, the district court thought it was imposing a sanction. It was barring you from trying these cases, at least at this trial. At least at this trial, I agree with that, and the district court did say in that same order that that made Petitioner a prevailing party. It didn't explain what test it was applying, and it certainly didn't say dismissed with prejudice. And this gets back to the point that I was making to Justice Breyer about Rule 41, which is that Rule 41 serves exactly this function. It tells you how to read a dismissal. It doesn't specify its effect. Sotomayor, the real problem for you is that any the dismissal of the action, even according to this order by the court, would happen at the end of the case. And at the end of this case, we had a dismissal with prejudice. One would think that everything would get merged into the final judgment. So I disagree with that, that you're talking about the dismissal ultimately entered after remand in 2013. And I do want to talk about that, but first I think it's helpful to just sort of tie down the 2009 dismissal originally. And just to wrap up the point, it's that under Rule 41, if you have a dismissal that's for lack of jurisdiction, that doesn't count as an adjudication on the merits. It's not with prejudice. And in this Court's decision in Costello, which courts have followed ever since, jurisdiction there doesn't mean jurisdiction in the sense of jurisdiction over the person or the subject matter. It also includes a precondition, failure to satisfy a precondition. Breyer, is this at the number 279101-2009, judgment in favor of CSRT against the EOC? I believe so, yes. Okay. Where is it? So the judgment that is actually entered is, I think, not in the joint appendix. Well, I mean, what does it say? Where do I find it? So you find it at docket entry number 279 on the district court's docket. What does it say? It says, All right. The action is dismissed. Yes. The action is dismissed. And so then to understand the effect of that dismissal, you look to Rule 41, which says a dismissal involuntarily, if ordinarily, operates as an adjudication with prejudice on the merits. We're not disagreeing with that as to the claims on which the district court passed on the merits and concluded that we didn't have enough evidence to survive a motion for summary judgment. And it has three exceptions, lack of jurisdiction, improper venue, or failure to join a party. Yes. This was not failure to join a party. Yes. It is not improper venue. Yes. I don't think it's lack of jurisdiction. Is that what it is, lack of jurisdiction? It's exactly that, because in this Court's decision in Costello, the Court said jurisdiction in Rule 41 doesn't mean lack of jurisdiction over the parties. It also includes failure to satisfy a precondition to bringing suit. In Costello, that particular precondition was the failure to file an affidavit of good cause before the government brought a denaturalization proceeding. That's a precondition that looks a lot like this one. And, in fact, in mock mining, this Court analogized the precondition at issue in Costello to the precondition at issue here. Mr. Fletcher, could I take you back to where you started, which is whether you've waived all of this? Yes. And, you know, you point out that the question presented includes your argument. But clearly it is, as you say, a different argument from the one you litigated below, both in the district court and in the circuit court and in the bio that you filed here. And Mr. Smith has responded to this new argument in less than a page, which is really his every right to do, given that it has sort of sprung from your head at this late date. And I'm wondering why we shouldn't just ignore the whole thing. So I'd like to address it separately. First of all, as to why it wasn't raised below, below this quote, both parties litigated this case on the understanding that it was governed by circuit precedent established by an Eighth Circuit decision called Marquardt that made clear that Well, you can always file a footnote, you know. Well, that's true, but I guess that argument doesn't do Mr. Smith much good, because he didn't make that argument either. He didn't challenge the on-merits rule in the Eighth Circuit. They didn't even do it in their petition for rehearing en banc. Now, we haven't argued that they've waived it, because we think it was within their rights to stay within the confines of circuit precedent and then to make a broader argument on the same legal question once they're in this Court. But we think we have an equal right to refine our arguments once we're free from the constraints of circuit precedent. Roberts. Roberts.        Roberts. Roberts. Roberts. Roberts. Roberts. Roberts. Roberts. Roberts. I mean, you'd be kind of futile to go before the Eighth Circuit and say we think you should overrule your precedent, at least in the panel decision, but that doesn't mean they're not free to raise the argument here. In fact, this is where you should go if you want a court of appeals to overrule this. Absolutely. And as I'm saying, I don't fault Mr. Smith for not raising, challenging the on-merits rule. I'm just saying that there's a good reason why we weren't considering a different challenge to that rule, because it just wasn't raised by either party. Both parties sort of litigated within the confines of Eighth Circuit precedent. Now, that also leaves the brief in opposition, Justice Kagan, which you also asked about. And there, you're right, we didn't raise this argument. We defended the Eighth Circuit's decision. In part, frankly, obviously, if we had it to do over again, we'd present the argument that we presented in our merits brief. But I think it's important to go back and look at the petition. The petition doesn't really develop a developed argument on this point either. It doesn't cite Buchanan. It doesn't make an extended argument about what it means to be a prevailing party. It mostly focuses on certiorari considerations. And we did the same thing in our brief in opposition. And I think this Court's argument or cases about when you waive an argument by failing to include it in the op are focused on cases where the argument is about why the question presented isn't really presented or why there's a bar to reaching it. And that's not what this argument is. Kagan. Kagan. Well, regardless of whether there's blame on either part, we're still in a situation where it really has not been briefed by one party and it hasn't been thought about by the courts below. And usually, you know, we do that where a court of review, not a first view line, and we would kick it back. Yes. You certainly could do that. We think, you know, we have presented it. It's aired in the amicus briefs, and Mr. Smith certainly could have addressed it at greater length in his reply brief. But if that's your view, it's certainly well within the Court's right to kick it back to the Eighth Circuit for consideration of these issues. Mr. Fletcher, is it your view that all of this discussion prevailing party, it's the academic, because there's no way that the EEOC could satisfy the Christenberg standard? I think I agree with that, Justice Ginsburg, and that's where I was going to go, was to say another option for this Court is to resolve this on the alternative ground that we've raised, which is Christenberg. Well, that seems even worse. I mean, nobody's thought about that. It seems to be a complicated factual scenario. You know, there are circumstances in which you could proceed with a class properly and circumstances in which you couldn't, and we know nothing about whether this is the circumstances one or the other. Well, you don't have to resolve it on the merits, but I think all you need to do is to say it was not unreasonable for us to think that we had done it here. And I think the way that you know that is because Judge Murphy, in a very persuasive dissent, concluded that we were not only reasonable but correct in thinking that we'd satisfied our obligations, and also because not even Petitioner is defending the rule that the district court applied. The district court said you cannot conciliate a claim on a class-wide basis. You have to conciliate on behalf of each and every one of these 67 individuals. That's the rule the Eighth Circuit applied. That's the rule Judge Murphy criticized. And Petitioner doesn't defend it. What Petitioner says instead is that this was all fine as long as we had a pattern of practice theory, and it only became not fine when we lost on summary judgment on the pattern of practice issue. But I don't think that our conciliation can become inadequate only when we lose a summary judgment motion. Thank you. Roberts. Roberts. Thank you, counsel. Mr. Smith, you have 3 minutes remaining. Smith. Thank you, Mr. Chief Justice. First of all, on the question of Buchanan and this idea that we have to show a change in the legal relationship between the parties, the first thing that Buchanan says is the paradigm of a case where there's been a prevailing party is where judgment has been entered. It only goes on to talk about this other more complicated stuff about legal relationships when it's talking about things plaintiffs win short of a judgment. But there's nothing in Buchanan that says a judgment, it can't be treated as a basis for a prevailing party. Now, to the extent it matters what the nature of the dismissal here was, and I don't know that it should, but it does, I'd point out that any uncertainty about the nature of the dismissal here arises from the fact that the government never made any argument in the courts below that the distinction made any difference. And, indeed, it contradicted the very point it's now making. It said to the Eighth Circuit, and this is on page 11 in our reply brief in the footnote, it said, quote, ''The Court recognized dismissal as a severe remedy and acknowledged it would result in dozens of potentially meritorious sexual harassment claims, never seeing the inside of a courtroom.'' Ginsburg. It said it may. May. May result, not would. No, no. I'm reading their quote from their brief where they left out the word ''may'' because they thought that it didn't make a difference, that they knew at the time and understood or at least believed she was referring to the fact that these individual women might be able to litigate their own claims. But they recognized over and over again in the courts below that the ''may'' didn't mean that the EOC could come back and litigate, that they were precluded. That's why they filed their Rule 60 motion 5 years later. Now, to the extent there was an argument that we shouldn't get all these fees, we should maybe get a little bit of fees because we should have raised the issue early on, the problem here precisely was the class action. The two are tied together and they were both, Judge Reed found, frivolous. The argument that there was a pattern of practice here and then the argument that they could go on and litigate on behalf of the individuals once the class action washed out. They're part of a package, but until we're Ginsburg did she hold that they would have to investigate and conciliate each individual claim? She said that where there is not a valid pattern or practice. I don't think there's anything in the Court's decision that suggests you can never conciliate a class claim. The Court so held in General Telephone, she cites the case. I don't know that the judge was intending to second-guess this Court's decision in General Telephone about how pattern and practice cases are litigated. The question is where you don't have any kind of a policy or standard operating procedure, you have a handful of individual stories or maybe a large number of individual stories, how do you conciliate those? And the answer she gave was you have to conciliate them one by one, just or you're not going to have a statutory policy. Sotomayor, what is the rule that you would like us to announce? When is it right to award prevailing defendants' attorney's fees? What would be your rule? When they've won a judgment and prevailed and where the ---- It doesn't matter with or without prejudice. I would think that that should not be in the rule, that that ought to be something within the discretion of the district judge for a lot of the reasons we've been discussing here. And where the claim that was dismissed was frivolous or unreasonable or without foundation under Christiansburg, and therefore caused costs to be incurred, as occurred here. And I don't see any reason why you would want to add additional constraints. Thank you, Your Honor. Thank you, counsel. The case is submitted.